IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 11-486 |
| | : | |
| DERRICK WILLIAMS | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                              **January 12, 2012**

      The defendant Derrick Williams, who is charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), has moved to suppress two packs of cocaine a police officer seized from inside his gym shorts while searching him during a traffic stop. He contends that the search exceeded the bounds of a permissible *Terry* search. The government counters that the search was a valid stop and frisk supported by the officer's reasonable suspicion of danger. It argues that the search was limited to finding weapons and that the officer "recognized the bulge" in the defendant's shorts as contraband only when he felt it during a protective pat-down of the defendant.

      Based upon an evaluation of the testimony and the credibility of the witness, we find that the officer searched Williams for drugs; and, before he felt the bulge, the officer did not believe that it was a weapon. We further find that the officer's search for drugs was not based upon a reasonable suspicion that the defendant had committed or was committing a crime, or may have been armed and dangerous. Therefore, because the search was not a legitimate pat-down *Terry* search for weapons, we shall grant the motion to dismiss.

## Background

Philadelphia Policeman Christopher Culver's involvement with the defendant began early in the day of August 2, 2011 when he received a telephone call from an agent with the Drug Enforcement Agency. The agent requested Culver to conduct a traffic stop of the defendant, whom he had under surveillance and who had a prior drug trafficking conviction. The agent gave Culver the defendant's location and heading in a black Audi.

Subsequently, Culver received information from the agent that the defendant had been seen entering and exiting 6531 North 17th Street, Philadelphia and was traveling in a 2005 gold Nissan. Culver eventually saw the defendant driving on Broad Street and followed him to the area of 19th and Cumberland Streets, a neighborhood that is known for drug trafficking.

While the defendant was in that area, Culver did not observe where he went or what he did. When the defendant reappeared twenty minutes later, Culver resumed following his vehicle. After seeing the defendant change lanes several times without using his turn signal and using a cell phone while operating the vehicle, Culver decided to stop the defendant's vehicle. At Broad and Louden Streets, he signaled the defendant to stop by flashing his dome lights and sounding his horn. The defendant immediately pulled his vehicle over to the curb.

Culver and his partner approached the defendant's vehicle, Culver on the driver's side and his partner on the passenger's side. Culver requested the defendant's driver's license, registration and proof of insurance. The defendant already had his driver's license in his hand. Culver ordered the defendant out of the vehicle.

After the defendant, who was dressed in a t-shirt and silky gym pants, exited the car,

Culver noticed a round softball-like bulge in his crotch area. While patting the defendant's crotch, Culver felt a hard object. When he squeezed it, he heard what sounded like paper or plastic and felt it crumble. He then reached into the defendant's shorts and retrieved two bags containing an off-white, chunky substance. He then placed the defendant under arrest and proceeded to search the interior of his car.

## Discussion

The analysis starts with the traffic stop. If it was valid, the inquiry turns to the legitimacy of the search. If the search was justified, we then must determine whether its scope exceeded the limits of a permissible *Terry* search.

The police may stop a vehicle after observing a traffic violation, and they may do so even though they may have another reason for the stop. *See Whren v. United States*, 517 U.S. 806, 818 (1996). In other words, the officer's motivation for conducting the stop is irrelevant. Thus, having seen Williams violate the Pennsylvania Motor Vehicle Code, 75 Pa. C. S. § 3334, and a City of Philadelphia ordinance, Phila. Code § 12-1132(3), Culver's stopping Williams was justified.

Once the police stop a vehicle, the stop may "last no longer than is necessary to effectuate the purpose of the stop," and the police may exercise only "the least intrusive means reasonably available." *Florida v. Royer*, 460 U.S. 491, 500 (1983). They may order the driver out of the car. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Mimms*, 434 U.S. at 110-11). At that point, if the officer has a reasonable suspicion that the occupant might be armed and dangerous, he may conduct a protective pat-down search for weapons. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The purpose of the limited search is to determine the presence of weapons, not contraband. *Id.* at 29-30. As *Terry*

instructed, "a protective search --- permitted without a warrant and on the basis of reasonable suspicion less than probable cause --- must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby'." *Minnesota v. Dickerson,* 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 26). When the protective search goes beyond a search for weapons, it ceases to be a valid *Terry* search. *Id.* at 373.

The Third Circuit has emphasized that "a *Terry* search cannot purposely be used to discover contraband, but it is permissible that contraband be confiscated if spontaneously discovered during a properly executed *Terry* search." *United States v. Yamba*, 506 F.3d 251, 259 (3d Cir. 2007). In other words, the search must have as its goal the protection of the officers and those nearby. If it is a search for weapons and not for contraband, contraband discovered during the limited search will not be suppressed. Conversely, if the officer was looking for contraband and not a weapon, it will be suppressed.

Here, Culver did not conduct a protective search for weapons. Rather, from the outset, he was searching for drugs. He stopped Williams because the DEA agent wanted him stopped. The agent informed him that DEA had Williams, who had a drug trafficking conviction, under surveillance. Culver knew that Williams had been in an area known for drug activity. He was looking for evidence of drug dealing.

At no point did Culver believe he or anyone else was in danger. He saw no weapon or anything that resembled a weapon. He articulated no facts that gave rise to a reasonable belief that Williams was armed and dangerous. The defendant obeyed Culver's commands, did not make any furtive moves outside the car, did not reach for his

4

waist or inside his shorts. He did not act threateningly. He made no attempt to flee. Therefore, Culver's search for drug evidence was not a permissible *Terry* pat-down search for weapons.

Even if the initial search had been a protective one aimed at finding weapons, the defendant argues that Culver went beyond *Terry's* limits when he squeezed and manipulated the hard object. If during a legitimate pat-down search the police feel an object that is apparently contraband, the police may seize it under the "plain feel" doctrine. *Dickerson* at 375-76. In other words, contraband detected through the sense of touch during a *Terry* search may be seized. *Id.* at 376.

Whether the search exceeds the boundary of a *Terry* search turns on when the officer had probable cause to believe that the object felt was contraband. *Id*. at 376-77. In *Dickerson*, the search exceeded the permissible scope of a *Terry* protective search when, after the officer had concluded the object inside the defendant's jacket pocket was not a weapon, he squeezed and manipulated it. *Id.* at 378. Stated differently, the dispositive factor in determining whether the feeling of an object exceeds the *Terry* boundary is "what the officer believes the object is by the time he concludes that it is not a weapon. That is, a *Terry* search cannot purposely be used to discover contraband, but it is permissible that contraband be confiscated if spontaneously discovered during a properly executed *Terry* search." *Yamba*, 506 F.3d at 259. The Third Circuit elaborated, "when determining whether the scope of a particular *Terry* search was proper, the areas of focus should be whether the officer had probable cause to believe an object was contraband *before* he knew it not to be a weapon and whether he acquired that knowledge in a manner consistent with a routine frisk." *Id*. (citations omitted).

5

In *Dickerson*, unlike this case, the police officer performed a protective pat-down aimed at finding weapons. Only after he began that search did he feel the drug package. In this case, Culver was not searching for weapons. He was searching for drugs. Thus, the search was invalid before Culver even felt the object in the defendant's pants.

The DEA agent wanted evidence of drug trafficking. There is no other reason the DEA agent asked him to stop the defendant. The agent was not asking Culver to stop the defendant to cite him for traffic violations. Although this fact does not invalidate the traffic stop, it does inform the reason or purpose for the search.

Having determined that Culver began his search for drugs rather than weapons, our analysis shifts from a *Terry* protective pat-down to a *Terry* stop and frisk one. We must decide whether Culver had sufficient reasonable suspicion to conduct his search. *Adams v. Williams*, 407 U.S. 143, 145-46 (1972), *citing Terry*, 392 at 21-23. We conclude he did not.

Had Culver seen Williams engage in a drug transaction or enter into a known drug house and emerge with a suspicious package or other indicia of drug dealing, he may have had reasonable suspicion to believe Williams was engaged in criminal activity and had contraband. But, he did not. What limited information he had from the DEA agent did not rise to the level of either probable cause or reasonable suspicion.

The object in the defendant's pants did not appear to be a weapon. Nevertheless, Culver felt it. Even if he was not sure whether it was a weapon at that time, he knew it was not one when he felt it. Yet, he took the additional step of squeezing it. When it crumbled, he knew it was not a weapon. He then went inside the defendant's shorts to retrieve the object.

Culver did not have a reasonable suspicion, let alone probable cause, that the defendant possessed drugs until after he squeezed the object and pulled it out of the defendant's pants.  Up to that point, he only knew that the defendant had a prior drug conviction and had just visited a neighborhood known for drug trafficking.  He did not see where he had gone while in the area.  Nor did he see what the defendant did there.  That the DEA had the defendant under surveillance and wanted him stopped does not supply reasonable suspicion or probable cause.

There is no evidence that the DEA agent gave Culver any additional information from which one could reasonably believe that the defendant had committed or was committing a crime.  In a footnote in its response to the motion, the government implies that Culver was given additional information which it elected not to disclose.  We can not speculate what that information, if any, was.  Consequently, we cannot assess whether it was enough to supply the requisite reasonable suspicion or probable cause.

## Conclusion

Based upon our assessment of the evidence presented and the credibility of the witness, we conclude that the police officer's search of Williams was not a permissible *Terry* search and that the officer did not have a reasonable suspicion that Williams had committed or was committing a crime.  Therefore, we shall grant the motion to suppress.